The first case is North Star Technology v. Latham Pool Products, 2023-2138. Mr. Dowd. Good morning, Your Honors. I may please the Court. Summary judgment should not have been granted in this design patent case for several reasons. First, the District Court relied on an undefined standard of sufficiently distinct or plainly dissimilar. There's no explanation of what is sufficiently distinct. On top of that, there are numerous factual disputes that a reasonable jury could have relied on to find that the two pool designs are substantially the same, which is the standard under Gorham. And the third point I'd like to get to is the improper exclusion of our CEO's testimony in the declaration in opposition of the summary judgment. So, Your Honor, in terms of the key factual disputes, we have the District Court's lack of consideration of symmetry that is common of the two pool designs. And both their expert and their witness, Michael Fox, explained that symmetry is an important consideration of design. We also have conflicting testimony from their witnesses, Lisa Kidd and Mr. Phillips, their expert, where Mr. Phillips says the focal point should be one thing and Lisa Kidd says the focal point should be the other thing. And that's a... Was symmetry raised below? Yes, it was, Your Honor. And so one of the points that we raised below, and which the District Court never considered in its opinion, are the six design elements, when taken as a whole, produce an appearance that is substantially the same as the accused device or the accused design. So you've got curved edges versus sharp edges. Your Honor, here's the thing. The pool as a whole is rectangular. The District Court concluded or stated that it was curved, despite testimony from Mr. Phillips, their expert, that says the pool is rectangular. There are certain elements...  Yes, Judge. When you say the pool is rectangular... Yes. You're talking about the commercial embodiment of the patented design, right? Because when I look at the patented design, I see a lot of 90-degree sharp edges. So if I understand your question, Judge Chen, I'm talking about the District Court's characterization of the Corinthian 16, which was the accused design. Oh, the accused design, there's curves in multiple different places. There are curved elements in plainly two places. One is the entry steps, and the second is the deep-end benches. Now, with the deep-end benches, the question is whether those are generally rectangular. And when we go to the District Court's opinion, the District Court relies on a pool design that shows a curved entry area and says that's rectangular. Latham's own expert recognizes that they are generally rectangular. In addition... I'm lost where you say generally. What are you pointing at when you say merely generally rectangular? So... I mean, I'm looking... If you're talking about your patented design, and I look at the drawings that were submitted to the Patent Office, I see a lot of straight-line edges everywhere. And then when I look at the accused design, we, as the District Court pointed out, can see that there are curved elements in different places on both ends of the pool. Your Honor, there's always going to be differences between the patented design and the accused design. And that's why it's important for this court... Not if they copy it, then you've got infringement. Judge Hughes, you have infringement if they're substantially the same. They don't have to be identical. And that goes back to Gorham. Gorham, there are significant differences between the silverware designs. If you look at all of the design elements, there are significant differences. So that... There's two... The steps are different sizes. There's curved edges on one of the benches, and there's not curved edges on another bench. There's little rectangular indents on the side, or curved things on the side of one of them. There's not on the other. All of the design elements are different. No, Your Honor. All of the design elements are not different. Point to the design elements that are the same. So you have a full-width tanning ledge. Okay. They're substantially the same. Except that one has these little, like, quarter oval cutouts on top of the tanning ledge, and the other one doesn't. And their expert, Mr. Phillips, recognized that those tanning ledges are both rectangular. And so the question... Pardon me.  Tanning ledge is rectangular. What else in the different designs are the same? So we laid out those six elements. No, no, you need to lay it out. I will, Your Honor. And one is the symmetry. Two, when you look at the entry steps from the... What do you mean symmetry? So it has a lengthwise symmetry of the pool. So the long axis is symmetrical on both sides. And if you go and look at all the... There are thousands of rectangular pools. But that's not the question, Your Honor. The question is why there's symmetry. Mr. Phillips testified expressly that symmetry is an important design element. The district court didn't consider it. The second is when you look at the steps that go from the tanning ledge into the shallow edge. Any reasonable consumer can look at those as being the same. And we have conflicted... Why? On one of them, the steps are the same size, and on one of them, there are different sizes. Because Mr. Phillips, their expert, and Lisa Kidd provided testimony where a reasonable jury can conclude that they're substantially the same. They do not have to be the same. And that's the key thing. And that's what's so flawed with the standard of sufficiently... So you have one step that's a foot. You have one step that's two foot. They're substantially the same? That's not this case at all, Your Honor. There's no testimony that says that one step is one foot and one step is two foot. And I'd urge the court to look at this. Well, can you... How about this? I'm just looking at the design of your patented swimming pool. Yes, Your Honor. Just assume for the moment that I cannot find anything in this design that shows me there's a contribution to the ornamental arts of swimming pools. How would you define what is the contribution to the ornamental arts? Your Honor, this comes straight from Egyptian goddess, straight from Gore. I'm just asking you. I don't need to hear quotes from case law. I just want to know how would you describe the patentable advance to the design of swimming pools based on looking at these drawings? Because there's no other pool that looks exactly like this or looks substantially... That looks exactly like this. ...or, if I may finish, or looks substantially the same until Latham started copying our pool design. I mean, we've had rectangular pools since there were pools. We've had rectangular tanning ledges ever since there were tanning ledges. We've had full-width steps from tanning ledges to the other part of the pool since forever. We've had deep-end benches since forever. And so I don't understand what was the contribution. What's the ornamentality here? The ornamentality is the specific... Because other than what I just identified, this pool design doesn't have anything. It's so elemental, so basic, so devoid of anything I would call design. Well, two things on that, Your Honor. That goes to invalidity. If Latham wants to raise the invalidity defense, that's a completely different issue. And second, from Egyptian goddess, this full court reminded the design patent bar that even if every element is known in the art, it's the particular configuration and combination and the way they're arranged. And that goes to, again, our testimony that we're relying on in terms of Phillips, Lisa Kidd, Michael Fox. These are all their witnesses that provided testimony that supports that a reasonable consumer could confuse the two. And that goes directly to the evidence of the Instagram post. The Instagram post, if anything, would be evidence that would support a finding of infringement. Not only just that there's a genuine disputed material fact. And the district court didn't address that properly. It dismissed it. It made an inference, made two inferences against our client at the summary judgment stage, which is not proper. So first off, the district court dismissed the Instagram post. And that's an example where Boyer Mountain, retailers for both companies at issue here, confused the infringing Corinthian 16 with our client's pool. What are the disputed material facts here? Pardon, Your Honor? What are the disputed material facts? We have a list of them. Again, it's the importance of symmetry and how a reasonable observer could use that and view the overall design. We have the question of the focal point. What's the focal point of the design? Their two witnesses provide conflicting evidence. We have the question of whether the pool as a whole is curved. It's plainly not curved. And we also have, we have the Instagram post. We have the question of the size of the pools. And again, this brings us to Gorham. When you look at Gorham, the designs on the silverware had plainly, I mean, one could conclude that they're plainly dissimilar. But the Supreme Court affirmed, or actually reversed the finding of non-infringement and found that there was infringement, even though the design elements were in an opposite configuration. It has been held that design patents have almost no scope. Your Honor, I'm going to push back on that, Judge Lurie, because that's complete dicta from In Re Man, written by Judge Rich. You mean dictum? Your Honor, yes. It's singular. Thank you. But it is complete dictum. It had nothing to do with that case because that case dealt with whether the experimental use exception applied to design patents. And so even if you accept or even want to push that idea that design patents have almost no scope, that contradicts or goes against the finding or the ruling in Gorham. It also goes against the ruling in Braun. So if we look at Braun where they had handheld blenders, this Court affirmed a jury verdict of infringement even though the accused device lacked a very noticeable notch. And Judge Chen, that goes to your question. So the issue here is yes, there may be one or two elements that are not in our pool exactly, but the question is whether they could be substantially the same in the eye of an ordinary observer. One other thing, Your Honor, and this goes back to disputed fact. So the District Court in assessing the question about the entry steps, the District Court relied on the testimony of Kerry Fox, who's the inventor here. And it's plain in the case law that you can't rely on the observation of an ordinary designer with respect to infringement. But Mr. Kerry is the designer. He's an inventor. He's a pool designer. So he can find differences, but that's not the pertinent question. The pertinent question is whether an ordinary observer can. And what we've established is that there are these numerous factual disputes that would allow a fact finder to conclude that they're substantially the same. They do not have to be exactly the same. And if I may, Your Honor, this brings us back to the question about what is meant by sufficiently distinct. And I'm unaware of any case from this Court that provides any guidance in terms of what is or is not sufficiently distinct in terms of a standard. And the sufficiently distinct standard, it comes from Egyptian goddess on page 678 of the opinion, and it starts off with the key phrase. It says in some instances. And so sufficiently distinct has to be narrowly cabined. Counsel, you wanted to save two minutes and you have just about that. Thank you, Your Honor. I'll preserve it. We will save it for you. Mr. Korn. Good morning, Your Honors. And may it please the Court. The District Court did not err in finding summary judgment of non-infringement. The District Court conducted a thorough analysis and followed this Court's precedent in Egyptian goddess to consider the overall appearance of the Corinthian 16 pool. And from that determined that the Corinthian 16 pool was sufficiently distinct and plainly dissimilar compared to all eight figures of the D 966 patent. Sometimes when you're just looking at two pictures and you're trying to figure out whether they're quote unquote substantially similar, that's going to be an impressionistic inquiry. Why shouldn't that just be left to a jury to decide? Well, Your Honor, in this situation, we have an undisputed record of what all eight figures of the 966 patent look like. We have an undisputed record of what the Corinthian 16 looks like. Those are compared under this Court's precedent in Ethicon and Lennart Toys and others. From the perspective of an ordinary observer, in this case, and this is really important, this is a homeowner who's considering purchasing and installing a swimming pool. So great care will be given to an expensive purchase that is a permanent fixture in the homeowner's backyard. And from that, the distinctions between the pools become that much more significant, and no reasonable juror would find that under the Egyptian goddess test that one would be deceived and induced into thinking one is the other. And therefore, there's no need to get a jury. I mean, I know you think that's true, but I have a hard time. I don't know. My house has a pocket-sized little backyard, so I'm not putting a pool of this size or any pool in my backyard. But if I'm a homeowner looking at these two designs, they look pretty similar to me. They're rectangles, they have tanning beds, they have steps, they have benches on the deep end. They look fairly similar. There are very minor differences between the two things. I mean, do you think that if it had gone to a jury and they found infringement, that we would be looking to reverse this on a JMAW? I mean, it seems to me like that would be, just the two pictures would be substantial evidence to support infringement. So, we don't think the reasonable juror could find that based on these facts. The pools, as you guys discussed with my friends, has substantial differences. One pool is very modern, and Lisa Kidd, who, by the way, is a North Star witness, not a Latham witness, but Lisa Kidd testified to the modern aspects of the pool, which is what this court, the district court, focused on as well. So, in the eight figures of the 966 patent, it's defined by straight lines and hard angles, which creates a very modern appearance, whereas the Latham pool uses their own curves and rounded edges to create a softer look. Judge Hughes, if you're just looking at the elements you referred to, that is at a conceptual level, which this court and Ethicon, Lennart, Toys, and others said is not sufficient for infringement. There wasn't a claim to destruction here, right? There was not, Your Honor. I mean, I struggle with these design patents all the time, but particularly with this one, because almost all of this stuff is simultaneously functional and designed. So, it's hard to tell when, from a reasonable observer test, what you have to subtract out as purely functional and what you look at for the design elements. So, the tanning bed is certainly functional. The shape and look of it is a design. The steps are functional, but the shape and look of them, the same thing with the benches. How do we even figure all of this out for determining what's the relevant question for what a reasonable juror is? Well, yes, Your Honor. So, this came up a bit in the statement of material fact number nine, which you can find our adversary's response in appendix 1325, where we put in a statement that said these are all functional elements, and they agreed that there is function, but they listed some of the ornamental natures of those elements. Right, like the benches at the deep end, clearly that's functional, in part to the fact that both of them have two benches, or both of them have benches, is partly functional. The fact that there may be two symmetrically could be a design. The shape of them, which frankly looks different, is a design. I don't know what else, but we've got this big jumble of things that are functional or not. Well, I think that's right, Your Honor, but if you look at whatever might be... Well, let me ask this, because I think Mr. Dowd makes some good points in that they're both rectangular, they're symmetry, they're symmetry between these two deep end benches, and so those all at least support a reasonable juror could find that that shows infringement. You've got some good points that the stuff you're talking about, the differences between the modern stuff, the hard lined edges, and the curved stuff in your design, it looks to me like the steps are two different sizes in one design and not in the other. There are these little, I don't know what you call them, little cutouts on the other end from the deep benches in your design and they don't have them. How do we determine when there's some things that are the same in the design and some things aren't? What's enough to get them over the hump to get to a jury on whether they're similar or not? So, Your Honor, I think in this situation that what they're calling the major features in their blue brief and in their gray brief are all conceptual. The idea that you have a rectangular pool with steps, a tanning ledge, middle steps, and then you slope from a shallow end to a deep end, which pools obviously do, and if you have benches in the deep end, they're going to be in the deep end, that there's some symmetry in pools that have existed for decades or hundreds of years, that it's undisputed that prior art shows all of these elements that are very similar to what's in the 966 patent that Cary Payne admitted that he didn't actually invent any of these elements. So what they point to are really these high-level concepts and general configurations that this Court says isn't sufficient for a finding of... I take your point. These pools are an incredibly crowded field and they're rectangular pools. There are benches and steps and tanning beds all over the place. But does that allow... I mean, I struggle in these cases because I know the Courts aren't really supposed to do claim construction very often, they're just supposed to look at the pictures, but it's still... I have a hard time figuring out when you're talking about a rectangular pool, how much attention can you pay to that? Because it's certainly in the prior art and it doesn't seem to me that that would be enough to be a design element worth having. I mean, I know the response from Mr. Dowd is going to be, well, you don't look at the piece by piece, you look at the overall effect, which is our law, but what if I see three things that are the same between the patented design and your pool, and I see six things that are different? Is that enough to get to a jury? Well, it depends perhaps in the hypothetical of what those similarities and differences are. In here, the similarities are at a conceptual level. The differences are at a design element level as the district court properly applying the test said that it creates a different visual impression on the entire pool. And I'd also like to note that Egyptian goddess made clear that when you have a crowded field with prior art, small differences take on more significance. And we don't think these are small differences, but these differences created a different visual impression, as the district court noted, one that has straight line and modern design of the 966 patent and the more curved soft review of the Corinthian 16. Your Honor, in reading the briefs, it's interesting that the appellant focuses on these high concept major features and calls the actual differences that we've been discussing here today as insignificant, which is based on pure attorney argument with no support from the record. But then you're saying they're significant. How do we know that? Well, because they're tied to what they actually invented in the 966 patent. All eight figures have to be looked at in a finding of infringement, and they're trying to walk away from the actual designs versus the sidelines in their patents. Maybe we think about them as being significant differences against the backdrop of what was known already in the design of living pools. And then brings us to the next question, which is when we try to understand the prior art in the context of an infringement claim, do we just go looking through all the prior art swimming pool designs and picking and choosing different individual design elements we can pluck out of different prior art swimming pools to find that they existed? Or do we look at actual complete prior art swimming pools and then try to compare those complete swimming pools against the patented swimming pool, your swimming pool, to try to provide some context of whether an ordinary observer, ordinary purchaser would find the accused pool to be similar to the patented pool? Well, Your Honor, I don't believe the law requires a one-to-one comparison. I imagine that that can be looked at. Egyptian goddess, based on its own language, states where there are many examples of similar prior art, which contemplates that you can look at a multitude of different references to help with contextualize what's different, what's similar, what's substantially the same in coming to this determination. So if you have a pool that shows general configurations, as their major features seem to be focused on, and that all the elements are disclosed, then the difference between a curved deep-end bench that's smaller versus a large deep-end bench that has a step on top of it becomes more significant. My understanding is the other side, in their brief, they present some comparators of prior art pools that look very, very different from their design and your design, and then they say, see, look at these prior art designs and how far away they are from the accused and patented designs. So is that an incomplete analysis, or is that a fair analysis? No, Your Honor, I don't think that's the right test. I don't think the right test is is the accused pool closer to the prior art or to one prior art reference or closer to the design patent or this three-way test that they've come up with that doesn't have support at all. How is the reasonable observer supposed to make his observations of a swimming pool? By looking at pictures or by hovering in a helicopter over these pools to see what a reasonable observer thinks about the similarity or differences? Yes, Your Honor. Well, the ordered observer in this case is a homeowner that is considering purchasing and installing a pool in their home. And in doing so, they would look at pictures and deciding what look that they want in their home and they would take into account because this is not an impulse purchase like Braun and Catalina Lighting and others, they would have great care into determining what they want their pool to look like. And do they want a pool that has large full-width step-in steps like the patent has with a complete rectangle that has a complete balance on the shallow end of the pool and large square deep-end benches with a step on top where everything is a hard angle and very modern looking? Or do they want a pool that has curves and soft edges and a curved standing ledge and two entry steps that are tucked into the corner which creates a different look and feel? So imagine someone who is either taking a loan or spending $50,000 to $100,000 to build a backyard and put their pool in it. There's going to be great care taken to those different design elements which can't just be set aside as insignificant based on attorney argument. What do these fiberglass pools go for? So the shells themselves are in the $20,000 to $30,000 range but then obviously installation costs more so you're in the $50,000 plus $1,000 and then everyone typically as we all know does their backyard at the same time so it turns into an expensive purchase that's permanent in someone's yard. Anything further? No, Your Honor. I just conclude by saying that the district court performed the proper analysis and there's been no error in her decision and with that I'll conclude my oral argument. Thank you. Thank you. Mr. Dowd has a couple of minutes. Thank you, Your Honor. Just a few quick points. I think many of the questions that I heard were similar questions that I have. As you likely know I do more utility patent work. That's why I'm working with Perry Sedman who's with me at council table today. It's a tough tough question to figure out what's substantially the same or what's sufficiently distinct and I think Judge Hughes, Judge Chen are getting at essentially what we're trying to press is that at a minimum when there are some similarities many similarities, you have to look at the whole design and compare it to the prior art and we're not saying, and I want to clarify this we're not saying simply because the accused design is closer to the patented design than the prior art, we win. What we're saying is that at a minimum that creates a factual question. The problem is that in these design patent cases we are ultimately looking at the pictures and if there aren't meaningful guidance on how you approach viewing those pictures and you get past summary judgment and you get to go into the courtroom and hold up two pictures to the jury and say, look, they're the same I mean, I will tell you my instant reaction when I looked at those is, of course these are the same and I'm pretty sure that a lot of people would do that, but then if you delve into design patent law to the extent that we have enough cases that I have any grounding in it whatsoever then you realize that you don't just completely look at the overall impact, you look at the specific design elements and then I think it becomes a lot harder but I think there's a real danger without having any kind of guidance or constraint in what the jury is going to do that they're just going to say what I would which is, oh, these are the same, which I know if you're representing plaintiffs is good for you but if you're representing defendants is not good for you. What kind of how would you solve that problem if you're giving jury instructions? Particularly since there's very often no claim construction Judge Hughes, it goes back to the Egyptian goddess sufficiently distinct, it's in some cases beyond that you look at the prior art but then you also look at the testimony we have testimony from witnesses we have an Instagram post and I think that Instagram post is really important here, Your Honor, because it does show the confusion actual confusion and the three-way or four-way comparison when you look at the images that allows a fact finder to have some objectivity here, not absolute objectivity and it also allows them to assess the scope of the design patent because as this court has explained design patents, it's a little like DOE on the utility patent site, not the exact same, but that's where the prior art allows you to provide some guidance and without that you don't have anything and this court has done that it's done it in Egyptian goddess with the nail buffers where the opinion presents the accused device the patent of design and the prior art it did it with Columbia sportswear Thank you, counsel. We will pull off thinking and attempt to arrive at the right decision. Thank you, Judge Lord.